Daniel J. Auerbach
BROWNING, KALECZYC, BERRY & HOVEN, P.C.
201 West Railroad Street, Suite 300
Missoula, MT 59801
Phone: (406) 728-1694
Fax: (406) 728-5475
daniel@bkbh.com

*Attorneys for Accredited Surety & Casualty Company, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## HELENA DIVISION

| | |
|---|---|
| ACCREDITED SURETY & CASUALTY COMPANY, INC., | Case No. CV-23-91-H-BMM-JTJ |
| Plaintiff, | **COMPLAINT TO ENFORCE JUDGMENT OF THIS COURT** |
| v. | |
| LANA MATER and MARCEL MATAR, | |
| Defendants. | |

Plaintiff, ACCREDITED SURETY & CASUALTY COMPANY, INC. ("Accredited"), by and through its attorneys, BROWNING, KALECZYC, BERRY & HOVEN, P.C., as and for its Complaint to Enforce Judgment of this Court against Defendants, LANA MATAR and MARCEL MATAR (collectively "The

Matars" or "Defendants"), allege, upon information and belief, at all material times as follows:

## SUMMARY OF ACTION

1.      This is a judgment enforcement action, including related claims arising therefrom for breach of contract, declaratory judgment, and equitable relief. This judgment enforcement action is the result of Defendants' coordinated efforts to frustrate and prevent Accredited from obtaining funds and collateral that it is lawfully owed under a prior arbitration award, dated January 13, 2022, and obtained against Foothill Insurance Company ("Foothill").

2.      Foothill is a corporation, duly organized under Montana law, and a Series Business Unit of Dresden Insurance Company, a special purpose captive insurance company, with its principal place of business located at c/o Active Captive Management, LLC, 314 N. Last Chance Gulch, Suite 301, Helena, Montana, 59601.

3.      The arbitration award held Foothill liable to Accredited for unpaid reinsurance billings in the amount of $1,615,627, plus interest of $177,168.45, with additional interest accruing at 10% per annum.  That award also contained an additional requirement that Foothill post an unconditional letter of credit in Accredited's favor for $1,611,635 as collateral for future liabilities on the program involving Accredited, Foothill and the Defendants.  That arbitration award was

confirmed by and entered as a judgment of this Court. *See Foothill Ins. Co. v. Accredited Surety & Casualty Co.*, Case No. CV-22-29-H-SEH, Order (Dec. 6, 2022) and Judgment in a Civil Case (Dec. 6, 2022) (the "Judgment").

4.     As set forth herein, Defendant, Lana Matar, has breached and defaulted on her contractual obligations as owner of Foothill to post collateral lawfully owed to Accredited under the arbitration award and this Court's Judgment.

5.     Additionally, the Matars, in their respective capacities as owners, directors, officers, employees and agents of Foothill and/or Greenwood General Insurance Agency ("Greenwood"), caused Foothill to ignore corporate formalities, and undercapitalized Foothill, in full knowledge of, and in a coordinated effort to avoid, Foothill's obligations to Accredited under the Judgment, such that Foothill's corporate veil should be pierced and they be adjudged Foothill's "alter egos", and as such are fully liable for Foothill's obligations under the arbitration awards and this Court's Judgment.

6.     Separately, Defendants individually engaged in the fraudulent transfer of assets to avoid liabilities owed to Accredited under the arbitration awards and this Court's Judgment, and tortuously interfered with Accredited's business relationship with Foothill, to avoid and frustrate Foothill's debts and/or contractual

and legal obligations owed to Accredited under the arbitration award and this Court's Judgment.

## JURISDICTION

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, in that the parties are diverse in citizenship and the amount in controversy is in excess of $75,000.

## VENUE

8.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claims herein occurred in this district.

## PARTIES

9.     Plaintiff, Accredited, is a Florida corporation with a principal place of business in Orlando, Florida.

10.     Defendant, Lana Matar ("Mrs. Matar") is an individual who resides in Glendale, California and is a citizen of the State of California.

11.     Mrs. Matar is now and always has been the 100% shareholder of Foothill.

12.     Mrs. Matar is the spouse of Defendant Marcel Matar ("Mr. Matar").

13.     Defendant, Marcel Matar is an individual who resides in Glendale, California, and is a citizen of the State of California.

14.    Mr. Matar is now and has always been an employee and/or agent of Foothill.

15.    Mr. Matar is the spouse of Defendant Lana Matar.

16.    Together, the Matars coordinated and orchestrated the creation of Foothill for the benefit of Defendants.

17.    At all relevant times, Mr. Matar exercised control over Foothill.

## FACTS

### The Foothill-Greenwood Program

18.    Prior to May 2018, Accredited and Greenwood conducted California surety business together as part of a separate and unrelated program.  That program terminated.

19.    Greenwood is an insurance agency operating as a middle-market underwriter and wholesaler with multiple lines of business including surety bonds and general liability for contractors.  (*See* https://gwmga.com/about-us-2/).

20.    At all relevant times, unless otherwise described, Lana Matar was the president and 100% owner of Greenwood.

21.    At all relevant times, Marcel Matar exercised substantial control over Greenwood and otherwise facilitated and performed the daily operations of Greenwood.

22.    On or about May 18, 2018, Marcel Matar, through his control of Greenwood, approached Accredited from his Greenwood email account, and sought to continue having Greenwood write California surety business using Accredited paper.

23.    Mr. Matar needed to issue California surety bonds on Accredited's paper because Greenwood was not licensed to do so.

24.    Florida (Accredited's domicile jurisdiction) has an anti-fronting statute. (*see* FLA. CODE § 624.404(4)(a)).    Thus, in order for Accredited to participate in this proposed program with Greenwood, the Florida Office of Insurance Regulation issued a Consent Order authorizing Accredited to act as a "front," subject to certain conditions, including the requirement that a reinsurer unauthorized to conduct business in Florida, such a Foothill, must provide certain minimal collateral requirements to participate in the program.

25.    Greenwood was unable to find a third-party reinsurer for this newly proposed program. Therefore, Greenwood, through Mr. Matar, suggested to Accredited that a new captive reinsurer, Foothill, be created so that Greenwood could continue writing California contractors' licensing bonds on Accredited paper and to satisfy Accredited's obligations under the Consent Order.

26.    Foothill was created and licensed in Montana as a special purpose captive insurance company under Certificate of Authority No. 6022-040 issued on August 6, 2018 based on an application signed by Lana Matar.

27.    Foothill is a Montana Series Business Unit of Dresden Insurance Company LLC and exists for the sole purpose of reinsuring the Greenwood-Foothill Program.

28.    Foothill is also a registered corporation in the state of Montana.

29.    Lana Matar purchased $73,131 worth of shares of Foothill stock and is now and always has been the 100% shareholder of Foothill.

30.    Foothill is an affiliate of Greenwood in that Foothill is directly related to Greenwood by shared means of ownership and control and was created for the sole purpose of facilitating Greenwood business.

31.    On August 7, 2018, Accredited and Foothill entered into a Reinsurance Agreement (the "RA") as part of the Greenwood-Foothill Program. See Exhibit A.

32.    The RA includes a retroactive date of May 1, 2018 and was executed by Lana Matar as the president and owner of Foothill.

33.    The RA, at paragraph 16, includes a choice of law provision stating that the laws of the State of Montana govern the Agreement.

34.    Also, on August 7, 2018, Accredited and Greenwood entered into a Managing General Agent Agreement (the "MGA") as part of the Greenwood-Foothill Program.

35.    The RA is referenced and attached to the MGA at Article 17.3, and is made a part of the MGA at Article 18.14 of the MGA.  Collectively, the MGA and RA shall be referred to as the "Program Contracts."

36.    On August 7, 2018, Lana Matar, as president and 100% owner of Greenwood, executed the MGA on behalf of Greenwood. At the same time, Lana Matar also executed the RA on behalf of Foothill as its president and 100% owner.

37.    Under the RA, Foothill is responsible for 100% of the ultimate net losses and related expenses arising under the California surety bonds issued as part of the Greenwood-Foothill Program.

38.    Under paragraphs 10 and 11 of the RA, Foothill ("or its owner, parent or affiliate," i.e., Mrs. Matar and Greenwood) are also obligated to post collateral for 150% of all of Foothill's future potential liabilities on the program (e.g., ceded reserves, IBNR, etc.) where Foothill could not.

39.    Under the Program Contracts, Greenwood kept the majority of all program premium collected, i.e., "a Commission of 71.25% . . . on Net Written Premium collected by the Managing General Agent as set forth under the

Reinsurance Agreement less the fronting fee, assessments and premium taxes." (MGA, Article 3.1).

40.    Under the Program Contracts, Accredited received a mere five percent (5%) of the program's "net written premium" for the use of its paper in California. (MGA, Article 3.2).

41.    Under Article 3.3 of the MGA and paragraph 1 of the RA, all other premium was ceded to Foothill (28.75%) or was used to pay taxes (2.5%).

42.    Under the Program Contracts, premium was only to be paid directly to Foothill where the premium exceeded the program loss and expense billed on a monthly basis.  (RA, Paragraph 7).

43.    Foothill further agreed to allow program premium to be used to satisfy its collateral obligations under the Program Contracts.

44.    In sum, Foothill and Greenwood (and their owners and ultimate financial beneficiaries, Marcel and Lana Matar) received the overwhelming majority of the benefit of the program (92.5% of the net written premium) and the corresponding obligations that went with it.

### Arbitration and Judgment Against Foothill

45.    By late December 2019, Foothill's loss, expense and collateral obligations under the program exceeded the ceded premium.

46.     Thereafter, Foothill defaulted on its reinsurance payment and collateral obligations under the RA.

47.     On December 16, 2020, Accredited commenced arbitration against Foothill before the American Arbitration Association pursuant to paragraph 16 of the RA, and therein demanded payment of unpaid reinsurance billings plus interest, as well as the required contractual collateral for future program liabilities.  That arbitration was assigned AAA Case No. 01-20-0019-2361 ("Foothill I").

48.     On January 13, 2022, in Foothill I the arbitrator issued a final award ("Award") in favor of Accredited for unpaid reinsurance billings totaling $1,615,627 (at that time), plus interest of $177,168.45, with additional accruing interest at 10% per annum. The Award also contained an additional requirement that Foothill post an unconditional letter of credit in Accredited's favor for the amount of $1,611,635 as contractual collateral for future program liabilities.

49.     Foothill challenged the Award in U.S. District Court for the District of Montana, Helena Division, in a case assigned Case No. CV-22-29-H-SEH.

50.     The Award was confirmed on December 6, 2022, and the Judgment was entered thereon.

51.     On March 6, 2023, the judgment was amended *nunc pro tunc* to set forth a sum certain with respect to the unpaid reinsurance billings ("Revised Judgment") for judgment enforcement purposes.

52.    Upon information and belief, Foothill, Mrs. Matar, and Mr. Matar did not report the Award, Judgment or Revised Judgment to the Commissioner of Securities and Insurance, Office of the Montana State Auditor.

53.    As a direct and proximate result of Defendants' conduct, detailed herein, Foothill has made no payments to satisfy the Award, Judgment or Revised Judgment and has defaulted on all of its obligations thereunder.

54.    On April 22, 2022, nearly half a year after its claims were dismissed in Foothill I, Foothill commenced a second arbitration against Accredited under the RA.  That arbitration was assigned AAA Case No. 01-22-0001-6814 ("Foothill II").

55.    Accredited moved in Foothill II for dismissal of Foothill's claims with prejudice.  On January 11, 2023, Accredited's requested relief was granted via final award.  Accordingly, all claims and defenses that were (or could have been) asserted in Foothill I and II related to the RA have been forever and finally adjudicated.

56.    Accredited is also presently arbitrating its disputes with Greenwood under the Program Contracts.  That arbitration was commenced in May 2021 ("Greenwood Arbitration").

57.    Foothill has failed to maintain its statutory required monetary surplus to satisfy its reinsurance obligations as set forth in Mont. Code Ann. § 33-28-104.

58.    On October 30, 2023, the Commissioner of Securities and Insurance, Office of the Montana State Auditor filed a Petition for Liquidation of Foothill in the Montana First Judicial District Court, Lewis and Clark County.

59.    That petition for liquidation alleges that Foothill is insolvent and that its liabilities, including its obligations under the Award, Judgment and/or Revised Judgment exceed Foothill's assets, which were incorrectly reported by Foothill as being only $288,258 as of December 31, 2022.

60.    Accredited is Foothill's sole creditor.

61.    A liquidation hearing is scheduled for February 15, 2024.

## COUNT I AGAINST DEFENDANT LANA MATAR: BREACH OF CONTRACT

62.    Plaintiff repeats and realleges the foregoing paragraphs with the same force and effect as set forth at length herein.

63.    Paragraph 11 of the RA provides, in relevant part: "The Reinsurer [Foothill], or its owner [Mrs. Matar], parent, or affiliate [Greenwood] acting on behalf of the Reinsurer [Foothill] and in favor of the Company [Accredited], shall within 2 business days of first receiving the Estimate [collateral demand] . . . obtain a letter of credit in an amount equivalent to 150% of the Estimate."

64.    Under this provision, Mrs. Matar (who signed the RA) agreed to provide, via contract and a conditional guaranty, the requisite letter of credit to Accredited where Foothill could not.

65.    Foothill did not post the requisite letter of credit required by the Award, Judgment, and/or Revised Judgement, notwithstanding Accredited's repeated demands to do so.

66.    Mrs. Matar did not provide the requisite letter of credit either.

67.    Had the unconditional letter of credit been posted as required, some or all of the outstanding reinsurance billing and interest would have been satisfied by such security.

68.    As a direct and proximate result of the letter of the letter of credit not being posted by Mrs. Matar, all reinsurance billings due under the RA remain outstanding subject to accruing interest.

69.    Accredited has exhausted all legal remedies (including multiple arbitrations and litigations) against Foothill, who is now insolvent.

70.    As a direct and proximate result of Mrs. Matar's breach of the RA and failure to fulfil her contractual and guaranty obligations thereunder, Accredited has been damaged by not receiving the money lawfully owed to it under the Award, Judgment, and Revised Judgement, and Mrs. Matar must post an unconditional letter of credit in the amount of $1,611,635 immediately.

71.    Mrs. Matar must also pay the outstanding reinsurance billings due Accredited in the amount of $1,615,627, plus interest of $177,168.45, with additional interest accruing at 10% annually, as consequential damages for her

breach of her obligations under RA paragraphs 10 and 11, and in full satisfaction of the Award, Judgment, and Revised Judgement. *See* Mont. Code Ann. § 27-1-311.

### COUNT II AGAINST DEFENDANT LANA MATAR: DECLARATORY JUDGMENT THAT LANA MATAR IS A GUARANTOR

72.    Plaintiff repeats and realleges the foregoing paragraphs with the same force and effect as set forth at length herein.

73.    Paragraph 11 of the RA is a conditional guaranty requiring Lana Matar, as owner of Foothill, to post the requisite letter of credit to Accredited where Foothill could not.

74.    Foothill is insolvent, and Lana Matar has not provided the requisite letter of credit.

75.    Under the facts and circumstances herein, there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

76.    Plaintiff is entitled to a Declaratory Judgment that defendant Lana Matar is Foothill's guarantor under paragraph 11 of the RA, and is now and continues to be bound by, and must perform in accordance with this provision; including posting the requisite letter of credit and paying all damages due Accredited under the Award, Judgment and Revised Judgment as consequential damages for her failure to provide the letter of credit.

## COUNT III AGAINST DEFENDANT LANA MATAR: DECLARATORY JUDGMENT THAT FOOTHILL IS LANA MATAR'S ALTER EGO

77.    Plaintiff repeats and realleges the foregoing paragraphs with the same force and effect as set forth at length herein.

78.    Lana Matar, Marcel Matar and Greenwood collectively exercised total control and dominion over the management and activities of Foothill.

79.    As signatory to both the RA and MGA and Lana Matar was fully knowledgeable of the Greenwood-Foothill Program with Accredited, and Foothill's (and its owners, parents' and affiliates') obligations thereunder.

80.    Despite this, Lana Matar knowingly caused Foothill to ignore corporate formalities and undercapitalized Foothill in a coordinated effort to avoid Foothill's obligations to Accredited.

81.    Specifically (and without limitation):

> i.    Lana Matar was the 100% shareholder of Foothill at all relevant times and financed Foothill with her personal funds.

> ii.   Lana Matar was the 100% shareholder of Greenwood at all relevant times.

> iii.  Foothill does not, and has never, had any employees.

> iv.   Foothill does not, and has never had its own office, computer system or email address.

v. Greenwood and its owner (Lana Matar), officers, directors, and/or employees, including defendant Marcel Matar, conducted the day-to-day business of Foothill using Greenwood resources, email addresses and business records.

vi. Greenwood, and Foothill share officers and directors.

vii. Greenwood and its owner (Lana Matar) officers, directors, and/or employees, including but not limited to Mr. Matar, had control over Foothill's bank accounts and routinely accessed information and withdrew funds from said accounts.

viii. Foothill and Lana Matar were knowingly delinquent in maintaining Foothill's statutorily mandated minimum capital surplus since, at least, January 31, 2020.

ix. Foothill and Lana Matar knowingly and fraudulently represented to the state of Montana that Foothill was properly capitalized.

x. Foothill and Lana Matar failed to timely apprise the Montana Commissioner of Securities and Insurance of its arbitrations and subsequent litigation with Accredited.

    xi. Foothill and Lana Matar failed to timely apprise the Montana Commissioner of Securities and Insurance of the Award, Judgment and Revised Judgment.

    xii. Foothill is presently in liquidation proceedings for undercapitalization.

82.    As a result of Lana Matar's conduct, Foothill was stripped of its corporate autonomy and was at all relevant times under the complete and collective control of Lana Matar, Marcel Matar and Greenwood (owned 100% by Lana Matar).

83.    These actions further rendered Foothill insolvent and completely unable to satisfy any of its legal obligations to Accredited.

84.    Recognizing Foothill as a separate corporate entity would, under the circumstances, sanction the inequities perpetrated by Lana Matar and further promote fraud and injustice.

85.    The corporate veil of Foothill should therefore be pierced, and a declaratory judgment should be issued against Lana Matar declaring that she is the alter ego of Foothill and, as such, is fully liable for the Award, Judgment and/or Revised Judgment that Accredited obtained against Foothill.

//

## COUNT IV AGAINST DEFENDANT MARCEL MATAR: DECLARATORY JUDGMENT THAT FOOTHILL IS MARCEL MATAR'S ALTER EGO

86.    Plaintiff repeats and realleges the foregoing paragraphs with the same force and effect as set forth at length herein.

87.    Marcel Matar, Lana Mara, and Greenwood coordinated the creation of Foothill and exercised total control and dominion over the management and activities of Foothill during all relevant times.

88.    Marcel Matar acted as the primary point of contact between Foothill and Foothill's captive manager, Active Captive Management ("ACM"), at all relevant times during the Foothill-Greenwood Program.

89.    At Greenwood's offices and/or through Mr. Matar's personal and/or Greenwood business email accounts, Marcel Matar directed Greenwood employees to conduct business on behalf of Foothill.

90.    Marcel Matar had full knowledge of the Greenwood-Foothill Program with Accredited, and Foothill's obligations thereunder.

91.    Despite this, Marcel Matar knowingly caused Foothill to ignore corporate formalities and undercapitalize itself in a coordinated effort to avoid Foothill's obligations to Accredited.

92.    Specifically (and without limitation):

        i.    Foothill does not, and has not ever, had any of its own employees.

ii. Foothill does not, and has never had its own office, computer system or email address.

iii. At Marcel Matar's direction, Greenwood and its officers, directors, and/or employees conducted the day-to-day business operations of Foothill using Greenwood resources, email addresses and business records.

iv. Greenwood and Foothill share officers and directors.

v. Greenwood and its officers, directors, and/or employees, including but not limited to Marcel Matar, had control of Foothill's bank accounts and routinely accessed information and withdrew funds from said accounts.

vi. Marcel Matar knew Foothill was delinquent in maintaining its statutorily mandated minimum capital surplus since, at least, January 31, 2020.

vii. Foothill and Marcel Matar knowingly and fraudulently represented to the State of Montana that Foothill was properly capitalized.

viii. Foothill and Marcel Matar failed to timely apprise the Montana Commissioner of Securities and Insurance of its arbitrations and subsequent litigation with Accredited.

ix. Foothill and Marcel Matar failed to timely apprise the Montana Commissioner of Securities and Insurance of the Award, Judgment and Revised Judgment.

x. Foothill is presently in liquidation proceedings for undercapitalization.

93. As a result of Marcel Matar's conduct, Foothill was stripped of its corporate autonomy and was at all relevant times under the complete control of Marcel Matar, Lana Matar and Greenwood (owned 100% by Lana Matar at all relevant times).

94. These actions further rendered Foothill insolvent and completely unable to satisfy its obligations to Accredited.

95. Recognizing Foothill as a separate corporate entity would, under the circumstances, sanction the inequities perpetrated by defendant Marcel Matar and further promote fraud and injustice.

96. Foothill's corporate veil should therefore be pierced, and Marcel Matar should be declared the alter ego of Foothill and, as such, is fully liable for the Award, Judgment and Revised Judgment Accredited obtained against Foothill.

//

## IN THE ALTERNATE, COUNT V AGAINST DEFENDANTS: FRAUDULENT CONVEYANCE IN VIOLATION OF Cal. Civ. Code § 3439 *et. seq.* (UNIFORM VOIDABLE TRANSFERS ACT)

97.     Plaintiff repeats and realleges the foregoing paragraphs with the same force and effect as set forth at length herein.

98.     California law governs this cause of action because the debtor, a/k/a Lana Matar, is a resident of California.

99.     On January 1, 2021 – and in the immediate aftermath of Accredited initiating Foothill I – Lana Matar, transferred full ownership of Greenwood to NewTec Insurance Systems, Inc. ("NewTec") for a mere $30,000 "in agreed installments."

100.    NewTec is a Nevada corporation, and at the time of Greenwood's transfer was wholly or partially owned by Defendant Marcel Matar.

101.    Marcel Matar is the majority owner of NewTec.

102.    After Accredited initiated Foothill I, Defendants knew that Foothill was undercapitalized, and that Accredited would likely pursue their personal assets as the alter egos of Foothill, and against Lana Matar and Greenwood as the guarantors of Foothill under the RA.

103.    The January 1, 2021 transfer of Greenwood from Lana Matar to NewTec, less than one month after Accredited initiated Foothill I, was made with

the actual intent to hinder, delay, and defraud Accredited in violation of CAL. CIV. CODE § 3439.04(a)(1).

104.   Accredited was **not** notified of this inter-spousal transfer when it occurred, despite being a party to the MGA with Greenwood and in the process of arbitrating Foothill I.

105.   Accredited did not learn of this fraudulent, inter-spousal transfer until September 2022 when it was disclosed by attorneys for Greenwood in the Greenwood Arbitration.

106.   The transfer of Greenwood from Lana Matar to NewTec was purportedly made for a sum of $30,000 "in agreed installments," which is not the reasonably equivalent value for Greenwood.

107.   A sum of $30,000 "in agreed installments" is facially unreasonable consideration for 100% of the shares in a highly successful insurance agency as Greenwood has held itself out to the public.  (*See* https://gwmga.com/about-us-2/ (holding Greenwood to be a thriving agency with multiple lines of business)).

108.   The $30,000 "in agreed installments" has never been paid to Mrs. Matar.

109.   The transfer of Greenwood from Lana Matar to NewTec was undertaken by Defendants in full knowledge that $30,000 "in agreed installments" was not the reasonably equivalent value for Greenwood.

110.  NewTec and Mr. Matar were not good faith transferees of Greenwood.

111.  Instead, Greenwood was transferred to NewTec and Mr. Matar to protect Greenwood and its original owner, Lana Matar, from obligations owed under the Award, Judgement and Revised Judgment.

112.  In violation of CAL. CIV. CODE § 3439.04(a)(2), Defendants coordinated and executed this transfer in full knowledge that Foothill was undercapitalized and possessed *de minimus* assets, and knew, or reasonably should have known, that Foothill would incur debts beyond its ability to pay as a result of the Foothill I and II arbitrations for which Greenwood and Defendants are liable.

113.  The transfer of Greenwood from Lana Matar to NewTec was, therefore, made in bad faith and is fraudulent as against Accredited within the meaning of CAL. CIV. CODE § 3439 *et. seq.* and should be voided and attachment levied against Lana Matar's interest in Greenwood at the time of the fraudulent transfer.

**IN THE ALTERNATE, COUNT VI AGAINST DEFENDANT MARCEL MATAR: FRAUDULENT CONVEYANCE IN VIOLATION OF CAL. CIV. CODE § 3439 *et. seq.* (UNIFORM VOIDABLE TRANSFERS ACT)**

114.  Plaintiff repeats and realleges the foregoing paragraphs with the same force and effect as set forth at length herein.

115.    On January 1, 2023, in the immediate aftermath of Accredited obtaining the Judgment against Foothill in this Court, ownership of Greenwood was again transferred from NewTec to Defendant Marcel Matar (80%); Richard Badoux (CEO, CFO, and Secretary of Greenwood) (12%); and Iyad Kaissar (employee of Greenwood) (8%).

116.    The January 1, 2023 transfer of Greenwood from NewTec to Defendant Marcel Matar, Richard Badoux (CEO, CFO, and Secretary of Greenwood), and Iyad Kaissar, less than one month after Accredited obtained a federal court judgment against Foothill, was made with the actual intent to hinder, delay, and defraud Accredited in violation of CAL. CIV. CODE § 3439.04(a)(1).

117.    Accredited was not notified of this transfer when it occurred, despite being a party to another pending arbitration with Greenwood.

118.    The January 1, 2023 transfer of Greenwood should be voided, damages awarded, and attachment levied against Marcel Matar's interest under CAL. CIV. CODE § 3439 *et. seq.*

### IN THE ALTERNATE, COUNT VII AGAINST DEFENDANT LANA MATAR: TORTIOUS INTERFERENCE WITH CONTRACT

119.    Plaintiff repeats and realleges the foregoing paragraphs with the same force and effect as set forth at length herein.

120.    Lana Matar was a signatory to the RA between Foothill and Accredited and is fully knowledgeable of the provisions therein.

121.  Paragraph 11 of the RA is also a conditional guarantee of payment that Lana Matar agreed to on behalf of herself (as Foothill's owner and president): "The Reinsurer [Foothill], or its owner [Mrs. Matar], parent, or affiliate [Greenwood] acting on behalf of the Reinsurer [Foothill] and in favor of the Company [Accredited], shall within 2 business days of first receiving the Estimate [collateral demand] . . . obtain a letter of credit in an amount equivalent to 150% of the Estimate."

122.  As held in Foothill I and confirmed by this Court, Foothill breached its duties under the RA and was delinquent in its obligations under paragraph 11.

123.  Lana Matar, as owner and director of Foothill, had an obligation to either ensure Foothill's compliance, or comply with paragraph 11 herself.

124.  Lana Matar intentionally and willfully caused the breach of paragraph 11 of the RA by, specifically and without limitation:

> i. Failing to ensure that Foothill complied with its obligations under the RA, including, but not limited to, failing to properly capitalize Foothill.
>
> ii. Failing to comply with her obligations under the RA as owner of Foothill.

125.   This was knowingly done for the unlawful and unjustifiable purpose of causing damage to Accredited as the only counter-signatory to the Program Contracts.

126.   Accredited properly pursued its remedies against Foothill and successfully obtained the Award, Judgment and/or Revised Judgment against Foothill.

127.   The Award, Judgment and/or Revised Judgment has not been paid by Foothill.

128.   Because of Foothill's default, Accredited must pursue alternative remedies against other parties to enforce the Judgment and/or Revised Judgment.

129.   Mrs. Matar – as owner and director of Foothill – was notified of the various breaches by, and causes of action against Foothill, and possibly herself, during the various arbitration proceedings against Foothill and Greenwood.

130.   Accredited was damaged, in an amount to be determined at trial, and loss resulted as a direct cause of Lana Matar's interference with the purpose and effect of the RA.

### IN THE ALTERNATE, COUNT VIII AGAINST DEFENDANT MARCEL MATAR: TORTIOUS INTERFERENCE WITH CONTRACT

131.   Plaintiff repeats and realleges the foregoing paragraphs with the same force and effect as set forth at length herein.

132.   Marcel Matar was involved in the negotiation, drafting and execution of the Program Contracts and is fully knowledgeable of the terms and provisions therein, as well as the overall purpose of the Greenwood-Foothill Program.

133.   Marcel Matar was aware of Foothill's undercapitalization from at least March 23, 2021, when he was notified by ACM that Foothill was undercapitalized in violation of Montana statute.

134.   Marcel Matar exercised control and dominion over Foothill's business operations through Greenwood and would routinely instruct Greenwood employees to conduct business on and for Foothill.

135.   Marcel Matar communicated with ACM on behalf of Foothill and provided instruction on behalf of Foothill to ACM.

136.   As determined in Foothill I and confirmed by this Court, Foothill breached its duties and obligations under the RA and was delinquent in its obligations under paragraph 11.

137.   Marcel Matar knowingly, intentionally, and willfully caused Foothill to be undercapitalized and instructed that Foothill not pay Accredited the funds it was due under the RA, or post collateral due Accredited under the RA, in violation of the terms of the Program Contracts.

138.   This was knowingly done for the unlawful and unjustifiable purpose of causing damage to Accredited; Foothill's sole creditor and the counter-signatory to the Program Contracts.

139.   Accredited properly pursued all of its remedies against Foothill and successfully obtained the Award, Judgment and Revised Judgment against Foothill.

140.   Foothill has made no payments to satisfy the Award, Judgment and/or Revised Judgment and has defaulted on all of its obligations thereunder.

141.   Because of Foothill's default and insolvency, Accredited must pursue remedies against other parties.

142.   Mr. Matar, who exercised full control and dominion over Foothill, was notified of the various causes of action against Foothill, and possibly himself, during the various proceedings against Foothill and arbitration against Greenwood.

143.   Accredited was damaged, in an amount to be determined at trial, and loss resulted as a direct cause of Marcel Matar's interference with the purpose and effect of the Program Contracts.

WHEREFORE, Plaintiff Accredited demands the following relief:

   a. on Count I, entering a judgment adjudging and decreeing Lana Matar in breach of her guarantor obligations under the Program Contracts, requiring Mrs. Matar to post an unconditional letter of credit in the

amount of $1,611,635, and ordering Mrs. Matar to pay outstanding reinsurance billings due Accredited in the amount of $1,615,627 plus interest of $177,168.45, and 10% per annum accruing interest from December 31, 2021; and

b.  on Count II, entering a declaratory judgment adjudging and decreeing that defendant, Lana Matar, is Foothill's guarantor under paragraph 11 of the RA, and as such, must perform in accordance with this provision; including posting the requisite letter of credit and paying all consequential damages due Accredited under the Award, Judgment and Revised Judgment.

c.  on Count III, entering a declaratory judgment adjudging and decreeing that defendant, Lana Matar, is the alter ego of Foothill and is personally liable for the Award, Judgment and Revised Judgment; and

d.  on Count IV, entering a declaratory judgment adjudging and decreeing that defendant, Marcel Matar, is the alter ego of Foothill and is personally liable for the Award, Judgment and Revised Judgment; and

e.  on Count V, entering a judgment adjudging and decreeing that the transfer of Greenwood from Lana Matar to NewTec was fraudulent

within the meaning of CAL. CIV. CODE § 3439 *et. seq*, void and attachment levied;

f.  on Count VI, entering a judgment adjudging and decreeing that the transfer of Greenwood from NewTec to Marcel Matar, Richard Badoux, and Iyad Kaissar was fraudulent within the meaning of CAL. CIV. CODE § 3439 *et. seq*, void and attachment levied; and

g.  on Count VII, in the alternate, entering a judgment adjudging and decreeing that defendant, Lana Matar, tortuously interfered with Foothill's performance under the RA, and awarding Accredited damages in an amount to be determined at trial; and

h.  on Count VIII, in the alternate, entering a judgment adjudging and decreeing that defendant, Marcel Matar, tortuously interfered with Foothill's performance under the RA, and awarding Accredited damages in an amount to be determined at trial; and

i.  granting Plaintiff such other and further relief as the Court deems just and proper.

DATED this 15th day of December, 2023.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By: */s/ Daniel J. Auerbach*

Daniel J. Auerbach

*Attorneys for Accredited Surety & Casualty Company, Inc.*